```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

ZUGERESE TRADING, L.L.C., ET            CIVIL ACTION
AL

VERSUS                                  NO: 08-936

INTERNAL REVENUE SERVICE                SECTION: J(4)
```

**ORDER AND REASONS**

Before the Court is Petitioners Zugerese Trading, LLC and Harbor Bay Fund, LLC's **Petition to Quash Summons (Rec. Doc. 1)** and the United States' **Motion to Deny Petition to Quash and for Enforcement of the IRS Summons (Rec. Doc. 9).**

These motions, which are opposed, are before the Court on the briefs.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that the United States' motion should be granted and the Petitioners' motion should be denied.

**Background Facts**

Petitioners are Illinois limited liability companies that primarily do business in Brazil.[1]  Petitioners are in the

---

[1] Petitioner Harbor Bay Fund, LLC is the holding company of Petitioner Zugerese Trading, LLC.

business of consumer receivable management and collection, partnering with creditors for the servicing and collection of semi-performing and performing consumer receivables.  Based upon the Internal Revenue Service's ("IRS") assertion that Petitioners engaged in "tax shelters" and "abusive transactions," the IRS launched an audit of each petitioner, as well as several other entities covering certain tax years.  Specifically, the IRS is examining transactions that generated losses claimed from writing down the value of "distressed debt," which consisted of consumer accounts receivable from one or more Brazilian retail stores.[2]  The examinations involving DAD tax shelters are taking place on two tracks.  The instant Petitioners fall within the first track, namely, an examination as to the correctness of returns filed by entities which passed on losses to United States taxpayers.  United States taxpayer-participants in these transactions, through their interest in one or more entities like the Petitioners, have claimed losses on their federal income tax returns related to those transactions of approximately $39,000,000 in 2003 and $119,000,000 in 2004.

　　　Pursuant to the audit, the IRS propounded a series of Information Document Requests (IDRs) upon Petitioners herein and

---

[2] These transactions are referred to as Distressed Asset and Debt, or DAD, tax shelters, and were the subject of the IRS's Coordinated Issue Paper ("CIP") dated April 18, 2007, and released to the public.

similarly-situated petitioners throughout the country.  In 2007, the IRS began propounding FDRs under 26 U.S.C. 982 upon Petitioners and similarly-situated taxpayers throughout the country.

Then, on January 5, 2008, the IRS issued a third-party summons,[3] relating to the year 2004, to Michael Weiser.  Weiser is alleged to have purchased and engaged in a DAD tax shelter transaction.  The summons calls for Weiser, who indirectly owns 96.04% of Zugerese Trading through his ownership in Harbor Bay Fund,[4] to appear for examination and to produce several documents, including:

(1) All documents regarding legal advice or tax advice in connection with Weiser's participation in Zugerese Trading and Harbor Bay Fund, and/or its activities, the legal or tax consequences of his participation, and/or tax return positions to

---

[3] Petitions to quash virtually identical summonses have been and are currently being litigated throughout the United States.  In fact, approximately twenty other petitions to quash summonses related to the DAD transactions have been filed in district courts around the country.  Each of these petitions to quash makes the same allegations as the instant petition.

[4] Zugerese Trading reported losses on its tax return and, because Petitioner is a pass through entity, those losses flowed through to Harbor Bay Fund, and then to the individual tax return of Weiser.

Also, there is only one summons relevant to the instant case, the one issued "in the matter of Zugerese Trading, LLC." The IRS never issued a summons "in the matter of Harbor Bay Fund, LLC," which is merely a flow through entity of Zugerese Trading, LLC.

be taken by or in connection with his participation in Zugerese Trading and Harbor Bay Fund, and/or its activities;

(2)   All documents discussing or purporting to describe the anticipated tax benefits, or the lack thereof, of Zugerese Trading, LLC and Harbor Bay Fund, and/or its activities, including but not limited to documents relating to advice that recommended that Weiser should not participate in Zugerese Trading and Harbor Bay Fund, and/or its activities or claim any tax benefits with respect thereto;

(3)   All engagement letters, representation letters, agreements, and correspondence relating to legal, professional, management, accounting, or tax advice relating to Zugerese Trading and Harbor Bay Fund, and/or its activities;

(4)   All documents, including but not limited to engagement letters, representation letters, agreements, and correspondence related to any fees for legal, professional, management, accounting, and tax advice and assistance incurred by Weiser and/or any entity controlled by Weiser in connection with Zugerese Trading and Harbor Bay Fund, and/or its activities;

(5)   All minutes, notes, correspondence, emails, calendar entries, and other recordings relating to or reflecting meetings, conferences, and telephone conversations in which Zugerese Trading and Harbor Bay Fund, and/or its activities was discussed;

(6)   All documents showing payment of any funds, including

but not limited to fees, paid or received by any party in connection with Zugerese Trading and Harbor Bay Fund, and/or its activities;

    (7)   All promissory notes between Weiser and Zugerese Trading and/or Harbor Bay Fund;

    (8)   All documents showing contributions to Harbor Bay Fund, including but not limited to notes, cancelled checks, wire transfers, brokerage statements, etc.;

    (9)   All agreements with Harbor Bay Fund, including but not limited to membership interest purchase agreements and subscription agreements.

    According to the IRS, these documents as well as Weiser's testimony will shed light on the alleged DAD tax shelters.

    Petitioners filed a motion to quash this summons, alleging that the IRS issued the summons for an improper purpose.  The IRS responded with a motion to enforce.

## **Discussion**

    Section 7602(a) of the IRC authorizes the IRS to issue an administrative summons for "the purpose of ascertaining the correctness of any return . . . [or for] determining the liability of any person for any internal revenue tax . . . ." Specifically, Section 7602(d), in relevant part, authorizes the IRS:

        (1)    To examine any books, papers, records, or other data which may be relevant or material

5

>>to such inquiry;
>
>(2)      To summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary [of the Treasury] may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

When faced with a petition to quash, the United States has the initial burden of satisfying the elements of a *prima facie* case for enforcement of the summons. Such elements include: (1) the investigation is being conducted for a legitimate purpose, (2) the inquiry may be relevant to that purpose, (3) the information sought is not already in the IRS's possession, and (4) the administrative steps required by the Internal Revenue Code (IRC) have been followed. See <u>United States v. Powell</u>, 379 U.S. 48, 57-58 (1964).

The burden on the government to present a *prima facie* case is "slight" or "minimal." <u>Mazurek v. United States</u>, 271 F.3d 226 (5th Cir. 2001). This showing can be, and typically is, made through the affidavit or sworn declaration of the IRS officer who issued the summons. In this case, the IRS has submitted the declaration of Revenue Agent Larry Weinger.

Once the IRS establishes such a *prima facie* case, the burden shifts to the party resisting the summons to show that the <u>Powell</u>

6

test has not been met or to demonstrate that enforcement of the summons would result in an "abuse" of the court's process. Mazurek, 271 F.3d at 230. The burden borne by the party resisting the summons is a "heavy" one. Id. Petitioners must do more than simply produce evidence that would call into question the IRS's *prima facie* case.

**A.  Arguments for and against the IRS's Establishment of *Prima Facie* Case**

   **1.   Legitimate Purpose**

Through Agent Weigner, the IRS states that it issued the summons for the valid purpose of determining the correctness of Petitioners' returns, rather than for harassment or any other improper purpose, as it is authorized to do pursuant to Section 7602. Zugerese Trading does not have an entity level income tax liability. Instead, items of income, deduction, gain, and loss flow through to the returns of the alleged tax shelter participants. As such, the IRS is also examining the correctness of returns filed by and the correct tax liabilities of the alleged tax shelter participants, which includes Weiser.

In opposition, Petitioners argue that the summons issued to Weiser is part of a "nationwide harassment effort on the part of the IRS." Specifically, Petitioners allege that the IRS issued the summons to harass Petitioners and their investors into abandoning their lawful positions with respect to the audits and

7

settle the matter, thus depriving Petitioners of their lawful income tax deductions.  Petitioners point to telephone conversations between the IRS and individual investors in which the IRS threatened severe penalties if the investors failed to settle, as well as threats to report one of Petitioners' attorneys, Sweta Shah, to the Director of Practice for disciplinary proceedings.  In addition, Petitioners argue that the IRS investigation is ongoing despite the IRS's acknowledgment that the transactions at issue are not abusive and admission that the IRS considers Petitioners' effort so comply with tax laws "sincere."

The IRS responds that Petitioners' unsworn allegations that IRS agents made statements suggesting harassing tactics are untrue and are factually insufficient to overcome the government's demonstrated legitimate purpose.[5]  Furthermore, the IRS argues that even if some of its agents individually employed the tactics alleged by Petitioners, the "institutional posture" of the IRS, not the intent of any individual agent, determines whether a summons was issued in bad faith.  See United States v. LaSalle Nat. Bank, 437 U.S. 298 (1978).

Courts in related cases involving the same lawyers and

---

[5]  The IRS points out that there is no statement under oath corroborating the allegation that the IRS attempted to "coerce" a settlement.  Furthermore, the affidavit of Sweta Shah fails to characterize the communications she had with IRS agents as involving "threats" as argued in Petitioner's brief.

identical allegations of harassment and bad faith have rejected such arguments, and this Court determines that the same result is warranted here. In <u>Powell</u>, the Supreme Court noted that the IRS can issue a summons to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." 379 U.S. at 57. Furthermore, the "function of the district court . . . in an enforcement proceeding is not to test the final merits of the claimed tax deduction, but to assess within the limits of <u>Powell</u> whether the IRS issued its summons for a legitimate tax determination purpose." <u>United States v. White</u>, 853 F.2d 107, 116 (2d Cir. 1988).

As such, this Court concludes that Petitioners have failed to offer sufficient evidence to satisfy their burden of disproving that the summons was issued in good faith and for a legitimate purpose.

**2.    Relevancy**

The IRS argues that as Weiser is believed to have engaged in a DAD tax shelter, he should have information about the receivables contributed to the limited liability companies, the value of the receivables at the time of the contribution and thereafter, and the motive and business purpose for engaging in the transaction.

As such, the documents sought by the second request in the summons, seeking documents related to the anticipated tax and

9

non-tax benefits of the transactions, will provide that information.  Weiser should have possession of the items sought by the third, fourth, sixth, and eighth requests, which seek engagement letters and invoices for professional advice, which relate to the income and expenses of the entities under audit.  The IRS argues that business relationships, service fees, correspondence, and payments directly relate to the income and expenses of the entities under audit.  Additionally, Weiser should have information sought by the fifth request, which seeks notes of discussions involving Petitioners which are relevant to many aspects of the examination as they reflect the facts and circumstances of the transactions.  Morever, Weiser should have information sought by the seventh and ninth requests, which include promissory notes and partnership agreements.  These documents are relevant because they relate to Weiser's cash outlay for his indirect investment in Zugerese Trading.  Finally, the IRS states that Weiser should have information about the due diligence performed by the persons and entities participating in the transactions, which relates to a determination of whether penalties should be imposed and whether Petitioners have any defense to penalties.  Such a determination, according to the IRS, requires an examination of the facts and circumstances, including Petitioners' reliance on the opinion of an advisor, the nature of the advice given, and whether the advice was based on

an accurate representation of the facts.  The first requested item seeks documents responsive to this determination.

In opposition, Petitioners argue that the summons is overly broad on its face as the first six requests seek "all" documents relating to, among other things, Petitioners' anticipated tax benefits, tax advice, and general correspondence pertaining to Petitioners "and/or [their] activities."

The controlling standard of potential relevance in summons enforcement cases was set forth by the Supreme Court in <u>United States v. Arthur Young & Co.</u>, 465 U.S. 805 (1984).  In short, the IRS should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense. <u>Id.</u>  In other words, the requested documents need only be "relevant" in the sense that they "have the potential to shed some light on any aspect" of the taxpayer's return.  <u>2121 Arlington Heights Corp. v. I.R.S.</u>, 77 F.3d 1166, 1168 (9th Cir. 1996).

Insofar as Petitioners argue that the summons is overly broad in that the document requests include the word "all," this argument is without merit.  The document requests are drafted in such a way as to limit the scope of the inclusive word "all" by specifically requesting the type of documents Weiser is to produce.

11

### 3. Whether Information Sought Is Already in the IRS's Possession

According to the IRS, while it has obtained information throughout the examination from many sources, Weiser has not provided and the IRS does not possess the information that is currently the subject of the instant summons to Weiser.

Petitioners argue that they have already provided the IRS with more than one million pages of documents, responsive records, DVDs, and CD-ROMs containing vast amounts of information, and go so far as to list several of the documents by name. However, even if Petitioners have produced some of the requested documents before, the IRS "should be afforded the opportunity to review records of the same . . . transactions maintained by . . . third-party recordkeepers, in order to ascertain whether the information in each set of documents is consistent." PAA Management, Ltd. v. United States, 1992 WL 346314, *5 (N.D. Ill. Nov. 19, 1991). This is "not evidence of bad faith, but simply indicates a thorough investigation." Id.

Consequently, Petitioners have failed to satisfy their burden in this instance as well.

### 4. Proper Administrative Steps

The IRS states that attested copies of the summons were properly served on Petitioners; all administrative steps required by the IRC for issuance of summons have been taken; and there is

no referral to the Justice Department with respect to Petitioner Zugerese Trading as defined in Section 7602(d) of the IRC. Since the summons was issued, the IRS has issued a Notice of Final Partnership Administrative Adjustments ("FPAA") to Zugerese Trading; however, the examination is ongoing and the summoned information is still useful to ascertain the correctness of the Petitioners' returns.

Petitioners respond that the IRS failed to give proper notification of the summons, as required by section 7602 of the IRC as copies of the summons were not sent to their "designated representative." See Treasury Regulation 601.506(a).

However, that same regulation notes that "failure to give notice or other written communication to the recognized representative will not affect the validity of any notice or other written communication delivered to the taxpayer." Id.; see also Smith v. United States, 478 F.2d 398 (5th Cir. 1973) (rejecting taxpayer's argument that notice was invalid because not sent to attorney). Petitioners themselves did receive proper notice, and as such, are not prejudiced in this instance. Furthermore, the ability of the IRS to file its own motion to enforce the summons finds support in IRC section 7609(b)(2)(A), which states that "[i]n any such proceeding, the Secretary may seek to compel compliance with the summons."

**B.   Abuse of Process**

Since Petitioners failed to satisfy their burden of proving that the IRS failed to meet the four elements of the Powell test, the Court must now determine whether Petitioners have satisfactorily demonstrated that enforcement of the summons would result in an "abuse" of the court's process.  Mazurek, 271 F.3d at 230.  An abuse of judicial process occurs when a summons is sought for an "improper purpose, such as . . . harass[ing] the taxpayer, . . . put[ting] pressure on him to settle a collateral dispute" or obtaining information solely for a criminal prosecution under the guise of a civil liability investigation."  Id. at 226.

The Court has already disposed of the argument that the IRS issued the summons to harass Petitioners, so there is no need to revisit that discussion here.  Petitioners also argue that the summons is being used as a pre-litigation discovery tool in an attempt to secure information that would not otherwise be available in a tax proceeding through traditional discovery.[6]  Petitioners rely on the fact that the audit team made certain statements regarding the supposed fact that the Government "had already decided to litigate" and have in fact issued an FPAA.

However, as recognized by the Second Circuit, the IRS's

---

[6] Petitioners argue that the IRS wishes to avoid the more restrictive discovery rules in Tax Court.

investigations may continue beyond the issuance of the FPAA. See PAA Management, Ltd. v. United States, 962 F.2d 212, 219 (3d Cir. 1992) ("[W]e cannot agree with the suggestion that the prospect of an eventual court challenge by a taxpayer or similar entity to an IRS determination and the likelihood that otherwise legitimate and relevant information sought by the IRS might eventually be discovered in that proceeding, deprives the IRS of its authority to summons the information at an earlier point in time in the process.").

Petitioners further argue that the IRS issued the summons to extend the statute of limitations.  The IRS generally has three years to audit a taxpayer's returns.  As the IRS is examining Petitioners' 2004 tax returns, the statute of limitations recently expired.  The IRS responds that it is the filing of a petition to quash a summons, not the issuance of the summons itself, that tolls the statute of limitations.  26 U.S.C. 7609(e)(1).  While this argument is somewhat self-serving and reliant on a technicality, it is not necessary to comment extensively on it in light of the fact that an FPAA has already been issued for Zugerese Trading.

**C.   Miscellaneous Matters**

   **1.   Subject Matter Jurisdiction**

The IRS argues that this Court lacks subject matter jurisdiction over the petition to quash due to the fact that

Petitioners failed to timely serve the petition on the IRS by registered or certified mail as is required by 26 U.S.C. 7609. 29 U.S.C. 7609(b)(2)(B).  Section 7609 requires notice of the petition to be given to the IRS within 20 days of the summons.[7] As a result, according to the IRS, there has been no waiver of sovereign immunity.  See Dillingham v. U.S. I.R.S., 2005 WL 1926654 (E.D. Cal. Apr. 25, 2005).

The statutory waiver of sovereign immunity for petitions to quash IRS summonses jurisdictionally requires that the petition be served on the United States Attorney's Office and the Attorney General.  IRC section 7609(b)(2)(B) requires a registered or certified mailing of the petition to quash "to such office as the Secretary [of the Treasury] may direct in the notice referred to in subsection (a)(1)."  The Secretary's directions are in Form 2039-D, petition Exhibit A.  The directions include the instruction that "Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4."  Petitioners rely on this reference to Rule 4 to argue that they did make service on the proper parties via certified mail within 120 days and nearly one month before the March 19, 2008 scheduled summons interview.

---

[7] In this case, the IRS's notices of the summons were issued on January 23, 2008, making notice by Petitioners due no later than February 14, 2008.  However, Petitioners did not issue the notice required by section 7609(b)(2)(B) until February 20, 2008.

16

Petitioners go on to argue that if the Court accepts the IRS's application of the federal rules (that would render section 7609's twenty day service requirement applicable to the instant case rather than that of Rule 4), that the doctrine of equitable tolling[8] should apply to excuse any inadvertent errors on the part of Petitioners, as the IRS summonses are misleading in the way the directions for preparing a petition to quash are set forth (i.e., nowhere on the face of the summonses does the IRS allude to the twenty-day requirement, but there are five references regarding compliance with the Federal Rules of Civil Procedure).

This Court determines that the IRS's arguments regarding subject matter jurisdiction are without merit.

**2.   Privilege**

To the extent Petitioners argue that the summons seek privileged information and/or attorney work product, they have made no effort to establish any of the elements required to show that an attorney-client or work product privilege exists, and as such, this argument is without merit.

**3.   Constitutional Arguments**

To the extent Petitioners argue that the summons should be quashed because it is unconstitutional on its face, these

---

[8]   Equitable tolling applies in casas against the United States government. <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95 (1990).

arguments are without merit in light of the fact that the Supreme Court has, on many occasions, upheld the validity of summons enforcement procedures set forth in the IRC and several other courts have likewise rejected similar First and Fifth Amendment as well as Separation of Powers challenges in the past.  See, e.g., Powell, 379 U.S. at 57-58.  Accordingly,[9]

**IT IS ORDERED** that Petitioners' **Petition to Quash Summons (Rec. Doc. 1)** is hereby **DENIED.**

---

[9] Petitioners include an alternative request for the opportunity to take discovery and participate in an evidentiary hearing in order to flesh out their allegations as to an alleged improper purpose on the part of th IRS.  Petitioners cite United States v. Southeast First Nat. Bank of Miami Springs for the proposition that in the Fifth Circuit, a petitioner's allegation of improper purpose is sufficient to trigger a limited adversary hearing where the taxpayer may question IRS officials concerning the IRS's reasons for issuing the summons.  655 F.2d 661, 667 (5th Cir. 1981).  A district judge "may not refuse a limited enforcement hearing when to do so would deny [the] taxpayer his sole means of demonstrating the truth (or falsity) of his allegations."  Id.

However, other Fifth Circuit cases have recognized that a taxpayer's right to an adversary hearing is not absolute.  In United States v. Newman, the Fifth Circuit held that "before a summoned party is entitled to an adversary hearing or pre-hearing discovery, he 'must raise in a substantial way the existence of substantial deficiencies in the summons proceedings.'" 441 F.2d 165 (5th Cir. 1971).  Furthermore, the Fifth Circuit in the more recent case of Mazurek v. United States determined that "allowing full opportunities for discovery would contravene the purpose of a summons enforcement proceeding, which is summary in nature" and that "there is no requirement that the court conduct a hearing or permit discovery in each and every case."  271 F.3d at 234.

The Court determines that an evidentiary hearing is not warranted or necessary in the instant circumstances.

**IT IS FURTHER ORDERED** that the United States' **Motion to Deny Petition to Quash and for Enforcement of the IRS Summons (Rec. Doc. 9)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Michael Weiser is to appear at a time and date to be set by the IRS to be sworn, to give testimony, and to produce the documents listed in the summons.

New Orleans, Louisiana, this 25th day of July, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE